UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | 1:14-CR-35 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| AARON SUTTLES | ) | |

## **M E M O R A N D U M**

On May 27, 2014, Defendant Aaron Suttles ("Defendant") filed a motion to suppress evidence seized on December 31, 2014 (Court File No. 13). This motion was referred to Magistrate Judge William B. Mitchell Carter, who held a hearing and subsequently filed a report and recommendation ("R&R) recommending that Defendant's motion to suppress be denied (Court File No. 20). Defendant timely objected (Court File No. 21), and the government responded (Court File No. 22). For the following reasons the Court will **ACCEPT** and **ADOPT** the R&R (Court File No. 20). Accordingly Defendant's motion to suppress will be **DENIED** (Court File No. 13).

**I.     RELEVANT FACTS**

On December 31, 2013, Sergeant Kevin Trussell ("Sgt. Trussel") and Officer Kelly Downs ("Officer Downs") were patrolling the College Hill Courts ("CHC") housing project on the west side of Chattanooga, Tennessee. CHC is known to be a high crime area and police have come to expect an uptick in criminal activity around the New Year's holiday.

While on patrol, the officers noticed two men sitting together and looking around. Despite patrolling the area often, officers did not recognize either man. One of the men, Defendant, was dressed in coveralls, which, in the officers' experience, are often used to conceal contraband. The other man was dressed in a red shirt. As the officers approached, the two men briefly "came together" in what appeared to the officers to be a drug transaction. The two men then got up and

began walking in separate directions.

As Defendant was walking away, Officer Downs called out to Defendant and requested that he "come here." Defendant ran and the officers gave chase. As Defendant ran he clutched the coveralls at the waist and briefly reached into his coveralls as he disappeared around the corner of a building. When the officers rounded the corner, they found Defendant, who had by then stopped running. Officer Downs handcuffed Defendant and placed him on the ground. As soon as Defendant was secured, Officer Downs asked, "Do you have anything on you?" Defendant responded that he had marijuana and crack cocaine. At this point, the officers searched Defendant and found the drugs. Officers searching the immediate area located a gun about 15 to 20 feet away.

Officers took Defendant to the stair well of a nearby building, *Mirandized* him and began questioning him about his activities. Defendant admitted that the gun was his and that he had sold about $10 worth of marijuana to the man in the red shirt. He stated that he had the gun because he needed it for protection.

## II.     STANDARD OF REVIEW

This Court must conduct a *de novo* review of those portions of the R&R to which objection is made. 28 U.S.C. § 636(b)(1)(C). But *de novo* review does not require the district court rehear witnesses whose testimony has been evaluated by the Magistrate Judge. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). The Magistrate Judge, as the factfinder, had the opportunity to observe and hear the witnesses and assess their demeanor, putting him in the best position to determine credibility. *Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). The Magistrate Judge's assessment of a witness's testimony is therefore entitled to deference. *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003).

## III. DISCUSSION

Defendant objects to three aspects of the Magistrate Judge's R&R: (1) he objects to the Magistrate Judge finding Officer Downs credible; (2) he objects to the Magistrate Judge's conclusion as to when he was "seized" and whether the gun was abandoned; and (3) he objects to the point at which the Magistrate Judge found that he was "in custody" for *Miranda* purposes. The Court explains below why these arguments are unavailing.

### A. Credibility Determination

Defendant argues that Magistrate Judge Carter erred in finding Officer Downs credible because Officer Downs failed to mention that Defendant was clutching his waist in her original report. Defendant relies solely on this one omission for his argument that this Court should second guess the Magistrate's credibility determination. This Court finds the argument unconvincing. The Magistrate Judge had the opportunity to observe and hear the witnesses and assess their demeanor and thus was in the best position to determine credibility. *See Moss*, 286 F.3d at 868. He explained that he found the witness credible and noted that police reports often do not contain every detail of an interaction. His assessment of the witness's testimony is entitled to deference, *Irorere*, 69 F. App'x at 236 (6th Cir. 2003), and the Court does not find that Defendant has presented sufficient evidence to call this assessment into question.

### B. Seizure and Abandonment

The Fourth Amendment to the United States Constitution guards against, *inter alia*, the unreasonable seizure of a person. U.S. Const. amend. IV. A seizure within the meaning of the Fourth Amendment occurs when a law enforcement officer "by means of physical force or show of authority terminates or restrains [a person's] freedom of movement through means intentionally

3

applied." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal citations, quotation marks omitted, and emphasis omitted); *United States v. Jones*, 673 F.3d 497, 502 (6th Cir. Mar. 7, 2012). Because the physical capture of a person is sufficient, but not necessary, to seize him, an officer can seize a person either through physical force or a show of authority. *Brendlin*, 551 U.S. at 254. Where a person does not initially submit to authority, the person is not seized until that person is either subdued by the officers or submits to their authority. *See United States v. Stittiams*, 417 Fed. App'x 530, 533–34 (6th Cir. 2011).

Defendant seems to argue that he was seized at the moment that he stopped running, regardless of whether he was in sight of the police or not and that, because the seizure occurred while he was out of sight of the police, there is no way to know whether he got rid of the gun before or after he was seized and thus the gun should be suppressed. This argument, while creative, is unavailing. When a person does not initially submit in the face of police orders, the person is not seized until the person actually submits to the police. *Id.* At the point Defendant discarded the gun he was not within the officer's line of sight and thus could not be submitting. The act of discarding the gun was itself a continuing act of defiance indicating a lack of submission. Because Defendant discarded the gun while he was not yet detained by the police, the Magistrate Judge correctly held that the gun was abandoned for purposes of the Fourth Amendment.[1]

### C. Arrest

Defendant objects to Magistrate Judge Carter's finding that Defendant was not "in custody" when he was on the ground and cuffed. This Court concludes that Magistrate Judge Carter correctly

---

[1] Defendant's arguments regarding the purported uncertainty as to the link between the gun and Defendant are unavailing. After being *Mirandized*, Defendant admitted to the officers that the gun was his and that he had discarded it.

4

determined the point at which the encounter shifted from investigative detention to formal arrest and finds Defendant's arguments to be unconvincing.

"There is no bright-line test for determining when an investigatory stop crosses the line and becomes an arrest." *United States v. Williams*, 170 F. App'x 399, 402 (6th Cir. 2006). Instead a court undertakes a fact-sensitive inquiry, taking into account the totality of the circumstances. *Id.* at 403. A court considers several factors: "(1) transportation of the detainee to another location; (2) significant restraints on freedom of movement involving physical confinement or other coercion; (3) use of weapons or bodily force; and (4) issuance of *Miranda* warnings." *Id.* No single factor is dispositive. *Id.*

When Defendant was asked "do you have anything on you," Defendant had been handcuffed and placed on the ground, but had neither been transported from the scene nor been given *Miranda* warnings. While the use of restraints and physical force generally counsels towards finding that there was a formal arrest, the Sixth Circuit has held that such restraints may be part of a reasonable investigative stop where the subject has demonstrated that he is a flight risk. *See United States v. Caruthers*, 458 F.3d 459, 468–69 (6th Cir. 2006). Here, Defendant had just recently sprinted away from the police. The police thus did not transform the brief investigative detention into a formal arrest when they secured Defendant before asking brief questions related to officer safety. Magistrate Judge Carter correctly determined that Defendant was not under arrest until after he told the officers that he was carrying drugs.

Defendant's argument that the government should be bound by the officer's statement that she placed Defendant "in custody" is without merit. As the Supreme Court has recently stated "[a]s used in our *Miranda* case law, "'custody' is a term of art." *Howes v. Fields*, 132 S. Ct. 1181, 1189
5

determined the point at which the encounter shifted from investigative detention to formal arrest and finds Defendant's arguments to be unconvincing.

"There is no bright-line test for determining when an investigatory stop crosses the line and becomes an arrest." *United States v. Williams*, 170 F. App'x 399, 402 (6th Cir. 2006). Instead a court undertakes a fact-sensitive inquiry, taking into account the totality of the circumstances. *Id.* at 403. A court considers several factors: "(1) transportation of the detainee to another location; (2) significant restraints on freedom of movement involving physical confinement or other coercion; (3) use of weapons or bodily force; and (4) issuance of *Miranda* warnings." *Id.* No single factor is dispositive. *Id.*

When Defendant was asked "do you have anything on you," Defendant had been handcuffed and placed on the ground, but had neither been transported from the scene nor been given *Miranda* warnings. While the use of restraints and physical force generally counsels towards finding that there was a formal arrest, the Sixth Circuit has held that such restraints may be part of a reasonable investigative stop where the subject has demonstrated that he is a flight risk. *See United States v. Caruthers*, 458 F.3d 459, 468–69 (6th Cir. 2006). Here, Defendant had just recently sprinted away from the police. The police thus did not transform the brief investigative detention into a formal arrest when they secured Defendant before asking brief questions related to officer safety. Magistrate Judge Carter correctly determined that Defendant was not under arrest until after he told the officers that he was carrying drugs.

Defendant's argument that the government should be bound by the officer's statement that she placed Defendant "in custody" is without merit. As the Supreme Court has recently stated "[a]s used in our *Miranda* case law, "'custody' is a term of art." *Howes v. Fields*, 132 S. Ct. 1181, 1189

(2012). The Magistrate Judge correctly approached the custody question as a legal question. After analyzing the totality pf the circumstances, he found, as does this Court, that Defendant was not in custody for *Miranda* purposes until after he told officers that he was carrying drugs.

## IV. CONCLUSION

After reviewing the record, the Court finds the Magistrate Judge properly concluded Defendant abandoned the gun before he was detained by the police and that he was not seized until the Officers placed him under arrest and *Mirandized* him. Therefore, the gun Defendant abandoned before he was seized is admissible as evidence against him as are the drugs found on his person and his statements both before and after he was arrested. Accordingly, the Court will **ACCEPT** and **ADOPT** the R&R (Court File No. 20). Defendant's Motion to Suppress will be **DENIED** (Court File No. 13).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**